**Henry D. BUFFALOW, Jr., Plaintiff-counter-claim-defendant-Appellant,**

v.

**UNITED STATES of America, Defendant-counter-claimant-Appellee.**

No. 95–17089.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1997.

Decided March 20, 1997.

David M. Kirsch, San Jose, CA, for the plaintiff-counter-claim-defendant-appellant.

Gary R. Allen and David I. Pincus, Tax Division, United States Department of Justice, Washington, DC, for the defendant-counter-claimant-appellee.

Before BRUNETTI, FERNANDEZ, and HAWKINS, Circuit Judges.

FERNANDEZ, Circuit Judge.

Henry D. Buffalow, Jr. appeals from the district court's judgment in favor of the United States in which the court determined that he was responsible for the payment of a penalty because of the failure to pay over taxes withheld from employees' wages by Buffalow's, Inc. in 1989 and 1990. He asserts that he is not responsible for the penalty because his failure to pay the taxes was not willful and because various tax payments, which were made, were improperly allocated by the Internal Revenue Service. We affirm.

## BACKGROUND

Buffalow was the president and the sole shareholder of Buffalow's, Inc. In the latter part of 1990, he discovered that the company was having cash flow problems, and he asked the company's controller to prepare a report of accounts payable, including any unpaid tax obligations. The controller did so, but did not tell Buffalow that there were unpaid federal employment tax liabilities. The controller then left the company and disappeared.

After the controller left, Buffalow received a notice from the Internal Revenue Service which indicated that the company had not paid to the United States the employee withholding taxes for the last quarter of 1989 and the first two quarters of 1990. He investigated, and by the end of February or beginning of March 1990 he discovered that the IRS was correct. For that reason, among others, he determined that the company could not survive and would have to be closed.

The company, however, did have some valuable assets in the form of preventative maintenance contracts and a customer list. As he saw it, those assets would have zero

value if the company simply closed its doors immediately. He decided that the wisest economic plan for all concerned was to keep the company in operation while he found buyers for those assets. Once the assets were sold, the secured debts could be paid, and what was left could be allocated to the tax liabilities. Of course, if the company were to stay open, amounts would have to be paid out for vendors and for operating expenses (including current wages) during the interim. Obviously, that money would not go to discharge the employee withholding tax debt, and that is where Buffalow's personal tax woes began.

Buffalow wrote to the IRS revenue officer and explained what he planned to do. She did not warn him that he was stepping into a tax quagmire. Instead, she simply asked him to keep her informed and to keep up payment of the ensuing payroll taxes for sure. He proceeded to carry out his plan and had some success.

The company did stay afloat long enough to sell some assets, pay current taxes, repay the secured debt, and pay about $100,000 on the company's accrued tax liabilities. One payment of $50,000 was expressly designated by the company for application to its 1990 tax liabilities. The IRS mistakenly attempted to apply the payment to the 1989 employee withholding tax liabilities, but when Buffalow brought the error to its attention, it applied the sum to the company's 1990 employee withholding tax liabilities instead. The remainder of the payments were not designated to any particular tax account. Thus, the IRS allocated those in a way that aided the fisc, that is, it applied them first to the liabilities other than those for employee withholding taxes.

Once the dust had settled, the IRS assessed Buffalow personally for the unpaid employee withholding tax liabilities on the theory that he was a responsible officer who had willfully failed to pay over those taxes. He paid a portion of the liability and then brought this action for a refund. The United States counterclaimed to recover the unpaid portion of the assessments. On cross motions for summary judgment, the district court found in favor of the United States, and this appeal ensued.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ We review the district court's grant of summary judgment de novo. *See Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

## DISCUSSION

Buffalow attacks the district court's judgment on two fronts. First, he asserts that he should not be personally liable for the unpaid employer withholding taxes at all. *See* 26 U.S.C. § 6672.[1] Second, he asserts that even if he could have personal liability of some kind, the payments which were made by the company were improperly allocated by the IRS. Neither of his arguments is based upon a proper interpretation of the tax law.

### A. *Responsible Person Penalty.*

■ Employers are required to withhold federal taxes from employee wages. *See* §§ 3102(a), 3402(a). When they do so, they hold the money in trust for the United States and must then pay the money over to the government on a quarterly basis. *See* § 7501(a). Those withheld amounts are known as trust fund taxes. *See Davis v. United States,* 961 F.2d 867, 869 (9th Cir. 1992). Other taxes owed by an employer are known as non-trust fund taxes. *Id.*

Because the trust fund taxes seem to be a source of ready cash, it sometimes happens that a company, which has cash flow difficulties, will draw upon them rather than paying them over to the government. If the tax liability were only that of the company, the government could suffer substantial losses when companies fail. That is because the

---

1. Hereafter all statutory references are to 26 U.S.C., unless otherwise stated.

employees must be credited with the withheld amounts in any event. *See id.* Therefore, Congress enacted § 6672, which provides, in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

This is referred to as the responsible person penalty provision.

Buffalow concedes that he is a responsible person; however, that is not enough to fix liability upon him. He must also have willfully failed to pay over the trust fund taxes, but he says that his failure was not willful. While he makes an appealing theoretical argument, he is in error because he confuses his motives with his actions.

To some willfulness sounds like a word which contains a suggestion of moral evil. It does not. "We have construed the term 'willfulness' for purposes of failing to pay over withholding taxes as a 'voluntary, conscious and intentional act to prefer other creditors over the United States.' No bad motive need be proved, and conduct motivated by reasonable cause, such as meeting the payroll, may be 'willful.'" *Phillips v. United States IRS,* 73 F.3d 939, 942 (9th Cir.1996) (citations omitted); *see also Jones v. United States,* 60 F.3d 584, 587–88 (9th Cir.1995); *Klotz v. United States,* 602 F.2d 920, 923 (9th Cir.1979); *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976). Undoubtedly, the standard is a harsh, even somewhat counterintuitive one, but it is the law. As we have said:

> If a responsible person knows that withholding taxes are delinquent, and uses corporate funds to pay other expenses, even to meet the payroll out of personal funds he lends the corporation, our precedents require that the failure to pay withholding taxes be deemed "willful." This may seem oppressive to the employer and employees, and amount to "unwittingly" willful, which

seems an oxymoron, but the proposition is established law.

*Phillips,* 73 F.3d at 942 (citations omitted).

Buffalow ran afoul of this body of law when he made a deliberate, if in many ways sound, decision to pay other creditors while he knew that the trust fund liability was outstanding and unpaid. *See Purcell v. United States,* 1 F.3d 932, 938 (9th Cir.1993). He does not deny that he did just that.

What Buffalow does claim is that he was trying to ultimately rescue something for the government, and his acts should not be considered willful because rescue operations should be encouraged. For that proposition he cites a Supreme Court case. *See Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) (holding that new management is not liable under § 6672 for trust fund delinquencies in existence at the time the new management took control). But we have thoroughly discussed that case and have firmly excluded its application to a situation where a continuing responsible person, like Buffalow, is the one who is conducting the rescue operations. *See Davis,* 961 F.2d at 871–78; *see also Purcell,* 1 F.3d at 938.

■ Finally, Buffalow seeks a kind of estoppel against the United States because the IRS revenue agent did not dissuade him from his proposed course and even seemed to tacitly approve of it. Unfortunately for Buffalow, it takes much more than that to bind the government. Buffalow's letter to the revenue officer could not have been a true settlement with the government because it was not accepted in writing. *See* § 7121; § 7122; 26 C.F.R. § 301.7122–1(d). If Buffalow made a mistake in that regard, his mistake cannot save him. *See Teel,* 529 F.2d at 906 (a mistaken belief that the tax need not be paid "does not suffice to render the failure to pay nonwillful"). Beyond that, what we said in *Purcell* applies here: "We are sympathetic to [his] plight." 1 F.3d at 940. However, at most the revenue officer "'encouraged' him to keep the business going, and behaved in a manner that led him to believe that the IRS would not seek to hold him personally responsible for the ... taxes. This testimony at best established a mere

omission or negligent failure on [the revenue officer's] part." *Id.* (footnote omitted). That will not suffice to estop the government. *Id.* Thus, Buffalow is a responsible person who willfully failed to pay over trust fund taxes, which were due.

### B. *Allocation of Payments.*

Buffalow's other attack revolves around the allocation of payments made by the company. It has two components, neither of which is effective.

■ (1) *Misallocation of Designated Payment.* When the company made one of its tax payments, it specifically designated that payment for application to 1990 liabilities. The IRS accidentally credited part of the payment to the 1989 trust fund liabilities, but corrected that when the error was brought to its attention. Buffalow now asserts that, because the IRS improperly designated the payment to the 1989 account, that assessment was discharged. He is wrong.

■ We start with the undeniable proposition that a taxpayer can designate the account to which a tax payment is to be applied and that the IRS must follow that designation. *See Tull v. United States,* 69 F.3d 394, 396–97 (9th Cir.1995); *United States v. Technical Knockout Graphics, Inc., (In re Technical Knockout Graphics, Inc.),* 833 F.2d 797, 799 (9th Cir.1987). In fact, when the IRS has failed to do so, we have directed that the error be corrected. *See Tull,* 69 F.3d at 399. Buffalow, however, argues that the initial misallocation extinguished the 1989 liability. That misapprehends what a misallocation is by assuming that what extinguishes a tax is the act of the IRS rather than the designation by the taxpayer.

■ We agree with the First Circuit's view that it is the taxpayer's designation, not the IRS's accounting entry, which extinguishes the tax assessment. As that circuit has said, "[W]hen a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment." *Clark v. United States,* 63 F.3d 83, 87 (1st Cir.1995). In *Clark,* the IRS had mistakenly applied a payment designated for the taxpayer's 1986 account to his 1985 ac-

count. He later claimed that the crediting had extinguished ·the 1985 assessment. The court disagreed. As it said, "[A]ssessments may only be extinguished by payment *tendered* by the taxpayer, and not by an IRS error." *Id.* at 89. As a result, the 1985 · assessment was alive and well, and the IRS was entitled to collect it. *Id.; see also O'Bryant v. United States,* 49 F.3d 340, 345–46· (7th Cir.1995); *United States v. Wilkes,* 946 F.2d 1143, 1152 (5th Cir.1991); *United States v. Young,* 79–2 United States Tax Case ¶ 9609 at 88,221, 1979 WL 1458 (D.Del. 1979); *Nitsos v. United States,* 58–1 United States Tax Case ¶ 9491(CCH) at 68,325, 1958 WL 10064 (S.D.Ala.1958).

Surely, that is a sensible view of the matter. The mere allocation has no final effect; the designation does. We have said as much in a similar situation. In *Davis,* 961 F.2d at 878, the taxpayer had made no designation whatever, but the IRS first allocated the payment to the trust fund assessment. Later, the IRS changed its mind and reallocated the payment to a non-trust fund assessment. We declared that the responsible person taxpayer could not complain about that because, among other things, the IRS's initial allocation decision should not straightjacket it, and because the taxpayer could not show any cognizable injury. *Id.* at 879–80. Surely, if allocations of undesignated payments do not bind the IRS, misallocations of designated payments cannot do so. Therefore, Buffalow cannot complain about the fact that he remains responsible for the 1989 trust fund liability, which was never extinguished by payment by the company.

■ (2) *Allocation of Undesignated Payments.* The second component of Buffalow's attack has much less merit. He complains about the IRS's allocation of undesignated payments to non-trust fund liabilities, an act which, of course, increased his liability as the person responsible for the unpaid trust fund taxes. He says that is unfair, but his argument is foreclosed by settled law. *See Davis,* 961 F.2d at 878; *see also United States v. Schroeder,* 900 F.2d 1144, 1149 (7th Cir. 1990); *Wood v. United States,* 808 F.2d 411, 416 (5th Cir.1987); *cf. Tull,* 69 F.3d at 397 (involuntary payments can be applied by the

IRS as it sees fit). The IRS consciously and consistently follows that approach because it maximizes tax collections. *See* Rev.Rul. 79–284, 1979–2 C.B. 83 (modifying Rev.Rul. 73–305). The fact that it also maximizes responsible person liability is unfortunate for Buffalow, but it is a misfortune the company, and he, could easily have avoided by giving an allocation instruction to the IRS.

## CONCLUSION

Buffalow claims that the IRS misled him; unfortunately for him, the fact is that he failed to con federal tax law. We do not say that Buffalow had a bad heart. But the tax engine is blindly voracious; it does not always look into a man's heart before it devours him.

As it was, Buffalow's problems were not caused by some contretemps; they followed his actions as the night the day. He is liable because he *did* pay other creditors before he saw to the payment of trust fund liabilities as to which he was a responsible person. It is true that his liability might have been lowered, had the company directed other allocations of its tax payments. But, as it sadly enough turned out, the company's allocations and failures to allocate inured to Buffalow's ultimate detriment. That too should have been foreseen. In short, he did not turn square enough corners [2] when he dealt with the IRS, and we must once again embrace the result of a "responsible person" case with velleity.[3]

AFFIRMED.

---

**2.** *See Rock Island, Ark. & La. R.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).

**3.** *See Phillips*, 73 F.3d at 943; *Jones*, 60 F.3d at 588. Counter-intuitive as it seems, Buffalow might well have been better off had he shut down

the company immediately rather than making a good faith effort to maximize the money available to all creditors, including the government. Cases like this one do not send a very edifying message to businesses and their lawyers.