Steven ROCHA, Rocha Enterprises Inc. and Aloha Sheet Metal, Inc. Plaintiffs,

v.

UNITED STATES of America Defendant.

No. CIV.00–72–HU.

United States District Court, D. Oregon.

Feb. 27, 2002.

William D. Bailey, Lake Oswego, OR, for Plaintiffs.

Michael Mosman, United States Attorney, Portland, Jeremy N. Hendon, Trial Attorney, Tax Division, U.S. Department of Justice, Washington D.C., Jian H. Grant, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Kristine Olson, U.S. Attorney's Office, Portland, OR, for Defendant.

## OPINION AND ORDER

HUBEL, United States Magistrate Judge.

This matter is before the court on defendant's second motion for summary judgment (# 50). For the following reasons, defendant's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

I.  Rocha Enterprises, Inc. dba Portland Mechanical Systems

Plaintiff Rocha Enterprises, Inc. (REI) was a painting contractor solely owned and operated by plaintiff Steven Rocha (Rocha). Rocha also performed bookkeeping and payroll services for other companies which he invoiced through REI.

Prior to 1992, Portland Mechanical Corporation (PMC), a sheet metal business, was one of Rocha's bookkeeping and payroll clients. In 1992 PMC experienced increased workers compensation rates and believed that it could no longer be competitive in the bid process for sheet metal work. Therefore, Rick Mercer, president and sole shareholder of PMC, approached Rocha to enter into an agreement in which Rocha would provide payroll services for PMC as before, but REI would "hire" PMC's employees to provide the labor on PMC's projects thus taking advantage of REI's more favorable worker's compensation rates. In return PMC would pay REI, dba Portland Mechanical Systems ("Systems") for its payroll services.[1]

Rocha agreed to Mercer's plan, although they did not draft or sign a written agreement. In order to accomplish the plan, REI registered the assumed business name Portland Mechanical Systems (Systems).[2] Systems then employed the former employees of PMC, but PMC continued to bid and contract for work for these employees in PMC's name.

Mercer hired, fired, and set wages for the former PMC employees. PMC also billed and collected the receivables generated by PMC's work. All of the income from PMC's projects went into PMC's bank account from which PMC paid all of its overhead costs, materials and expenses other than payroll. Rocha continued to prepare the paychecks and payroll withholding and tax deposit checks for the

---

1.  In essence, Systems would act as an employment agency for PMC.

2.  Although Rocha registered a dba for Systems, Systems was never a separate entity from REI. Systems was not a separate corporation, nor did Rocha file separate tax returns for Systems.

former PMC workers. However, Rocha drew the paychecks and the payroll withholding and tax deposit checks on a separate Systems bank account established solely for this purpose. Rocha prepared and signed payroll tax returns and made out and signed checks for payment of the payroll taxes drawn on the Systems bank account.

Rocha also prepared checks, which he was not authorized to sign, made payable to Systems and drawn on PMC's bank account, to cover the payroll and associated payroll costs including the withholding taxes. Rocha then submitted the unsigned checks to Mercer for Mercer to sign and return to Rocha for deposit in the Systems account. If Mercer did not sign and release the checks, the Systems account was unfunded. On payday, Mercer would sign and release the PMC checks for deposit to the Systems account in an amount sufficient to cover paychecks, net of the withholding and taxes. The following month, on or before the due date for the withholding and tax payment, PMC paid Systems an amount sufficient to cover the taxes.

Mercer failed to sign checks to cover the tax payments in 1993, but did sign checks to cover employee wages. Rocha began working with the Internal Revenue Service (IRS) and Systems paid the first quarter taxes by July 31, 1993. Systems paid the second quarter taxes by September 20, 1993. In November, 1993, Mercer again failed to release funds sufficient to satisfy the balance due for third quarter taxes and released no funds for the fourth quarter taxes. Rocha notified Mercer that he would no longer prepare and issue further net paychecks or pay other payroll related expenses for the PMC workers through Systems until the taxes were paid.

Rocha told the IRS about the payroll arrangement between Systems and PMC and that PMC had substantial accounts receivable sufficient to satisfy the unpaid tax liability. Rocha informed the IRS agent that PMC owned Systems in excess of $109,000 for payroll taxes outstanding and in accounting fees. Rocha requested that the IRS levy the amount due Systems from PMC's assets and apply the levy to the unpaid payroll taxes.

Mercer agreed to liquidate PMC and sought the advice of attorney John Hanson. Hanson advised Mercer to sell the assets of PMC, on installment, to a newly formed corporation, Aloha Sheet Metal, Inc.. (ASM), to be owned and operated by Mercer and Rocha. PMC would then assign the installment payments to the government to satisfy the tax obligation. On December 31, 1993, PMC ceased operations and changed its name to Baseline, Inc. (Baseline) for the purposes of winding up.

In January 1994, all of the assets of PMC, other than the accounts receivable, were transferred to ASM for the purchase price of $150,000. In return, ASM signed an installment promissory note for $150,000. Hanson prepared an Assignment for the Benefit of Creditors, signed by Mercer as president of Baseline/PMC, which recited that Baseline assigned all of its assets to Hanson, in trust, for payment of claims, including payroll taxes owed by Systems. Mercer also signed an Assignment prepared by Hanson which assigned the ASM note to Baseline to Hanson's client trust account for the benefit of the IRS, Oregon Department of Revenue, and the Oregon Employment Department.

The IRS agent agreed with Hanson that the IRS would accept the assignment of the payments on the ASM note. Accordingly, the IRS did not levy the equipment and receivables of PMC. However, Hanson's installment payments to the IRS stopped in December, 1994, after only four payments. On April 16, 1995, the IRS sent a final demand to PMC for levy of

amounts owed to Systems. By that time Mercer had collected or written off over $100,000 of PMC's receivables.

## II. Aloha Sheet Metal

From July 1994, through December 1994, ASM made the installment payments to Hansen and Hansen to the IRS pursuant to the Assignment agreement. In January 1995, Rocha learned that Mercer was personally collecting the receivables of AMS and not giving them to Hansen. Accordingly, after December, 1994, ASM fell behind in its withholding and was unable to continue to make payments on the note assigned to pay Systems' payroll taxes.

Upon learning that Mercer was no longer forwarding payments to Hansen, Rocha decided to close down ASM and liquidate its assets to satisfy the tax obligations of ASM and PMC. In order to institute his plan, Rocha acquired a majority of ASM's stock from shareholders other than Mercer and retained an attorney for advice in liquidating ASM's assets.

Rocha and his attorney contacted the IRS and arranged for the surrender of all ASM assets. Rocha turned over to the IRS agent the lists of accounts receivable and equipment. Rocha then proceeded to close up the ASM business. However, prior to the IRS levies in April, 1995, Mercer seized some ASM assets and collected several ASM receivables for his own benefit. Rocha also alleges that although other receivables were paid to the IRS, the IRS did not apply those to reduce Rocha's trust fund debt.

The IRS assessed a penalty against REI, Rocha, and ASM for unpaid payroll taxes pursuant to 26 U.S.C. § 6672. Rocha paid a portion of the taxes and the penalty and plaintiffs filed this action for refund of the payments.

## PROCEDURAL HISTORY

Defendant initially moved for summary judgment on the issue of the application of credits made by the IRS to plaintiffs' account in addition to the issue of liability. However, in its reply brief, defendant acknowledged that were issues of fact at that time with respect to the issue of the amount of plaintiffs' tax liability, therefore defendant withdrew it's motion with respect to that issue.

On the first motion for summary judgment, the court held that Rocha was a responsible party pursuant to 26 U.S.C. § 6672. The court also held that Rocha willfully failed to pay trust fund taxes. Finally, the court held that because "the liability of a responsible person imposed by § 6672 is separate and distinct from [that] imposed upon the employer," *Balzer v. United States*, 2000 WL 1130075, *6 (N.D.Cal.2000) (quotations omitted), "the IRS is not obligated to pursue the assets of the corporation before pursuing responsible persons." *Id. See also Reph v. United States*, 615 F.Supp. 1236, 1242 (N.D.Ohio 1985). ("The [IRS] need not attempt collections of the tax assessment from the corporate employer before asserting the personal liability of a responsible person. In addition, as the liability of the employer is separate and distinct from that of the responsible person, the United States' lack of due diligence against the employer would not relieve the responsible person's liability."); *United States v. De Beradinis*, 395 F.Supp. 944, 953 (D.Conn. 1975) ("it is no defense to a responsible person penalty to claim that the United States failed to take collection action activity against assets in the possession of a third party.").

Therefore, the IRS' alleged failure to levy on the assets of ASM before Mercer dissipated the assets did not relieve Rocha of his liability. The IRS was not required

to levy on the assets of ASM before or instead of seeking payment of the taxes from Rocha.

Currently before the court is defendant's motion for summary judgment on the issue of the amount of tax liability owed by plaintiffs. After an extensive briefing, this issue is now properly before the court.

## STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the Court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.' " *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987)). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Industrial Co.*, 475 U.S. at 587, 106 S.Ct. 1348. If the factual context makes the non-moving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In Re Agric. Research and Technology Group*, 916 F.2d 528, 534 (9th Cir.1990); *Cal. Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

## DISCUSSION

Defendant contends that Rocha owes $109,800.94 plus accruals and statutory additions from May 31, 2001. This amount is comprised of the total trust fund taxes that Rocha Industries and ASM failed to pay in the amounts of $36,918.60 for Rocha Industries in second quarter through fourth quarter of 1993; $5,854.57 for Rocha Industries in fourth quarter of 1994 and first and second quarters in 1995; and $32,350.42 for ASM for second quarter 1994 through first quarter 1995; plus penalties and accruals on those amounts.[3]

Plaintiffs contend that defendant improperly failed to credit certain of their payments and improperly allocated their payments to non-trust fund portions of the taxes due.

### I. Trust–Fund Taxes Generally

Social Security taxes (FICA) are paid in part by the employer and in part by employees. In order to facilitate employee payment of FICA and their income taxes, the IRC requires employers to withhold federal income tax and FICA from the

---

**3.** These continue to accrue as long as those amounts are owing regardless of pending litigation

wages of its employees. 26 U.S.C. § 3102(a), 3402(a); *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). The employer must withhold both FICA and the employees' income taxes each pay period and then pay these amounts over to the government each quarter. *Jones v. United States*, 60 F.3d 584, 588 (9th Cir.1995). Until the employer pays these amounts to the government, they are held by the employer in trust for the government, thus the designation, "trust-fund taxes." 26 U.S.C. § 7501(a), *Purcell v. United States*, 1 F.3d 932, 936 (9th Cir.1993). The portion of the FICA taxes paid by the employer are not held in trust and are designated as "non-trust fund taxes." *Slodov*, 436 U.S. at 243, 98 S.Ct. 1778.

The government credits employees with payment of the trust-fund taxes as soon as they are withheld from the employees' pay. 26 U.S.C. § 1462; *Slodov*, 436 U.S. at 243, 98 S.Ct. 1778. In turn, the government looks to the employer, holding the funds in trust, for payment of these funds. Because, Congress noted, employers with financial difficulties often failed to pay over the funds held in trust in an effort to keep their business afloat via what amounted to non-consensual loans of these funds, Congress enacted 26 U.S.C. § 6672, the trust fund recovery penalty, in order to provide the government with an additional means of collecting the trust fund taxes. Section 6672 provides in pertinent part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, truthfully account for and pay over such tax ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). As noted above, on defendant's first motion for summary judgment, the court determined that Rocha was a responsible party and that he willfully failed to pay the trust-fund taxes. At issue in this motion is the total amount of plaintiffs' tax liability.

## II. Burden of Proof as to Trust–Fund Taxes

In determining the amount of liability in a section 6672 case, the government has the initial burden of establishing a prima facie case of the taxpayer's liability. The government adequately establishes a prima facie case by introducing Certificates of Assessments and Payments setting forth the relevant assessments and payments, form 4340. Once the government produces the proper 4340 forms, the burden shifts to the taxpayer who must establish by a preponderance of the evidence that the 4340 forms are incorrect. *United States v. Molitor*, 337 F.2d 917, 922–23 (9th Cir.1964); *Holland v. United States*, 1988 WL 179793, *7 (E.D.Cal.1988).

Defendant adequately set forth its prima facie case by producing 4340 forms for the relevant time periods at issue and an explanation of the computation process of the assessments at issue. Declaration of Janssen Exhs. B–D. Therefore, the burden shifts to plaintiffs to come forward and establish by a preponderance of the evidence that there is a material issue of fact regarding the amount of assessments at issue. Plaintiffs make a number of arguments which the court will address in turn.

## III. Payments for Rocha Industries ("REI")

### A. Application of $5,184.00 payment to the Second Quarter 1993 Period

Plaintiffs contend that the government misapplied $5,184.00 of a payment of $40,667.18 for Rocha Industries to periods other than the second quarter of 1993 resulting in a civil penalty for the second quarter of 1993. The government does not dispute that it improperly applied

$5,184.00 to the first quarter of 1993 and the forth quarter of 1992. Accordingly, the government reallocated the $5,184.00 to the second quarter of 1993. Such allocation resulted in the record of payment in full of REI's trust fund and non-trust fund taxes and the removal of the statutory additions assessed.[4] Janssen Decl. ¶ 5, Exh. B. Furthermore, the government noted that the reallocation resulted in a credit of $4,487.02, which it applied to REI's third quarter 1993 statutory additions.

Plaintiffs contend that the government failed to produce evidence of how this reduction of $5,184 could result in an increase in the assessed claim against plaintiff. The court concludes that the government produced an explanation for the allocation of the claim which is supported by the evidence. However, the court recognizes that defendant's explanation of the allocation of this payment does not explain the increase in plaintiffs' total tax liability, nor does it explain how the government reached the figure of $109,800.94 as plaintiffs' total tax liability.

### B. Application of payments to the Third Quarter of 1993

Plaintiffs allege that the government's reallocation of $4,487.02 to the statutory additions assessed is not proper. Rather, Rocha seems to contend that the overpayment from second quarter of 1993 should have gone to reduce the trust fund portion of REI's taxes, not to reduce statutory assessments. Plaintiffs contend that the designation "941-2" on their check for $40,667.18 constituted a designation that the entire amount of that check should have gone to pay the taxes due, not to pay statutory additions. Therefore, plaintiffs contend, the IRS may not now designate

any overage of that payment to the statutory additions, it must pay it to the underlying tax liability first.

Generally, when a taxpayer makes a "voluntary" payment of taxes, he may designate how those funds are to applied. *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983). Plaintiff concedes, however, that when the payment is involuntary, the IRS may generally apply the payment in the way that serves the best interests of the government.

The designation "941-2" on the check suggests, at most, that plaintiffs intended this check to pay the 941 taxes for the second quarter.[5] The taxes due for the second quarter at that time included statutory additions and penalties. There is no designation or statement on the check showing that plaintiffs requested that this check pay only the taxes due and no part of the statutory additions. Moreover, it is questionable whether such a designation, even if it did exist, would be sufficient to require the IRS to pay any overage only to the taxes due in the next quarter, not to the penalties. Accordingly, although the payment of $40,667.18 was voluntary, plaintiffs designated, at best, only that it be applied to the second quarter of 1993. The IRS did allocate that payment to second quarter 1993.

With respect to other additional payments that were credited to the third quarter 1993 taxes, there is no evidence that these payments were designated solely for the second quarter or that they were specifically designated as payments to taxes only, rather than to statutory additions. Therefore, plaintiffs' argument regarding designation to the statutory additions rather than to the taxes due is unpersuasive.

---

4. Totals for Taxes owed and accrued for Rocha and ASM are attached at exhibits A and B to this opinion.

5. 941 taxes are comprised of the employer's share of FICA taxes, the employees' share of FICA, and the employees' income tax withholdings.

## C. Alleged Misapplication of Deposits

Plaintiffs alleges that defendant misapplied to $24,113.27 that plaintiffs paid for the third quarter of 1993. Defendant allocated $11,016.76 of the payment to the employer portion of the FICA taxes, $11,016.76 of the payment to the employee portion of the FICA taxes, and the remaining $2,079.75 to the employee withholding for income tax, leaving $15,212.36 of employee withholding taxes owing. Plaintiffs contend that the IRS should have applied the entire amount of the payments to the trust fund portion of the taxes, totaling $28,308.87, thereby reducing the portion of trust fund taxes owed to $4,195.60 rather than $15,212.36 and therefore reducing the amount of statutory additions for that quarter.

Plaintiffs contend that their designation on the checks at issue of "941-3" required the government to apply the total amounts of those checks to the trust fund portion of the 941 taxes for the third quarter. However, as the court explained above, this designation, if sufficient for any allocation, merely suffices to designate the amounts to be paid towards the form 941 taxes for third quarter 1993, which are comprised of non-trust fund and trust fund taxes as well as statutory additions thereon. Plaintiffs note that there is no special requirement for the manner of designating tax payments, but plaintiffs have produced no evidence other than the designation of "941-3" on the face of the check to suggest that they specifically designated these payments for trust fund taxes only. This designation is not sufficient to put the IRS on notice of plaintiffs' alleged intention that these payments should be put towards the trust fund portion of third quarter 1993 taxes only.

Absent some designation suggesting that the IRS put these payments towards the trust fund portion of the taxes first, the Ninth Circuit has approved the IRS' policy to allocate the payments in whatever way it desires pursuant to its policy. *See Buffalow v. United States*, 109 F.3d 570 (9th Cir.1997). In *Buffalow*, the Ninth Circuit noted that the IRS "consciously and consistently" allocates nondesignated payments to non-trust fund liabilities before trust fund liabilities "because it maximizes tax collections." *Id.* at 574. The court noted "[t]he fact that [this allocation plan] also maximizes responsible person liability is unfortunate for [plaintiff], but it is a misfortune the company, and he, could easily have avoided by giving an allocation instruction to the IRS." *Id.* Accordingly, the defendant's allocation of the third quarter 1993 payments first to non-trust fund taxes and then to trust fund taxes in the absence of a designation to the contrary, is not improper.

Plaintiffs fail to create a material issue of fact with respect to the government's allocation of plaintiffs' third quarter 1993 payments. Accordingly, defendant's motion for summary judgment is granted with respect to these payments.

## D. Promissory Note

Plaintiffs further allege that IRS revenue officer Janssen accepted the assignment of a promissory note in satisfaction of the delinquent taxes of Rocha Industries. In support of this acceptance, plaintiffs produced the affidavit of Rocha stating that "Jansen [sic] agreed with Hanson that the IRS would accept the assignment of some of the payments of the $75,000 note due from ASM for purchase of the assets, at the rate of $1,400.00 per month, and did not pursue collection of the levy." [6]

---

**6.** The court has discussed a number of times that the IRS is not required to first levy on the assets of the corporation before seeking payment from a responsible person because the

Although this statement in Rocha's affidavit is hearsay, defendant does not object to it and Janssen doesn't deny making the statement attributed to her by Rocha in any of her declarations. However, accepting the statement as noted by Rocha does not end the inquiry about the promissory note. According to Rocha's affidavit, Janssen agreed to accept assignment of some of the payments, not assignment of the note itself. Even if Janssen did agree to accept payments on the note assigned for the benefit of the IRS, it is undisputed that only a few payments were made. The IRS properly credited these towards plaintiffs' liability. For example, in plaintiffs' exhibit 13, a form 4340 for Rocha's tax liability, the IRS has credited REI with two of these payments on July 25, 1994, and on November 4, 1994 towards REI's second quarter 1993 liability.

Plaintiffs fail to produce evidence sufficient to create a material issue of fact regarding whether officer Janssen agreed to accept assignment of the promissory note itself in payment of the taxes due. Rather, plaintiffs' evidence demonstrates that at most Officer Janssen agreed to accept some payments made on the note. The IRS did accept such payments as it received them. Accordingly, defendant is entitled to summary judgment on this issue.

E. Alleged failure to credit two payments of $1,400.00 made on the promissory note

Plaintiffs allege that defendant failed to credit two payments of $1,400.00 to any portion of plaintiffs' tax liability. In support of plaintiffs alleged payment of these amounts, plaintiffs point to their exhibit 15, pg. 1 and 3. However, the evidence pointed to by plaintiffs consists only of the fronts of two checks made out to the IRS. Plaintiffs produced no evidence that these

checks were sent, cashed, or cleared through any of their accounts.

However, Officer Janssen states in her Declaration in support of the reply that the IRS did receive the two payments of $1,400.00 at issue. However, because the checks did not make any designation as to which period to which they should be applied, the IRS applied $205.76 of the September 15, 1994 payment of $1,400 to the second quarter 1993 941 taxes and the remainder to fourth quarter 1993 FUTA taxes. Similarly, the IRS allocated $285.51 of the December 21, 1994 payment to second quarter 1993 form 941 taxes and the remainder to first quarter 1994 941 taxes. Accordingly, the IRS received these payments and credited them to plaintiffs tax liability. As the court discussed above, when the taxpayer does not designate how the payment should be allocated, the IRS may allocate the payment in the manner it sees fit. Accordingly, the allocation of these funds is not a basis for denial of summary judgment.

III. ASM Taxes and Assessments

A. Forth Quarter 1994 taxes

Plaintiffs allege that they specifically designated two checks to be paid to the trust fund portion of ASM's fourth quarter 1994 taxes. Pltfs. Exh. 28 (Appdx. 17–1 and 17–2). However, one of these checks, Appdx 17–1, bears only the designation "Form 941–4 4th QTR 1994." As the court noted above, such designation is, at most, a request that the IRS put the funds towards a specific quarter, in this case the forth quarter of 1994. It is not sufficient to require the IRS to allocate those funds only to the trust fund portion of the 941 taxes due for fourth quarter 1994. Accordingly, the defendant was free to allocate the payment in accordance with its policies within the fourth quarter 1994 pe-

liability of a responsible party is separate and

distinct from the liability of the corporation.

riod. The government allocated the funds first to the employer's portion of FICA, then to the employee portion of FICA and then to employee taxes withheld. Due to this allocation plaintiffs still owed a portion of the employee withholding trust fund taxes. Such an allocation was not inappropriate.

Plaintiffs fail to create a material issue of fact with respect to the allocation of these payments. Defendant's motion for summary judgment is granted with respect to this portion of plaintiffs' claim.

### B. Alleged Dissipation of Assets and Estoppel

Plaintiffs contend that the IRS improperly allowed the assets of ASM to be dissipated. The court addressed this argument thoroughly in its opinion on defendant's first motion for summary judgment and rejected plaintiffs' claim. Plaintiffs have not come forth with new facts or law altering the court's decision. Accordingly, the court declines to change its decision that the IRS is not required to levy against the assets of the corporation before seeking the taxes owed from plaintiff Rocha. The court's ruling stands on the issue of dissipation of assets.

Plaintiff further alleges that defendant should be estopped from asserting its claim because defendant failed to liquidate plaintiffs assets before they were dissipated and plaintiffs believed that defendant would do so. However, as the court has stated numerous times, defendant is not required to act as a collection agency for plaintiffs. The IRS is not required to levy against the assets of the corporation or to seek payment from the corporation before seeking payment from Rocha. Accordingly, plaintiffs have failed to show "affirmative misconduct going beyond mere negligence" by defendant. *See Watkins v. United States Army,* 875 F.2d 699, 707 (9th Cir.1989), *cert. denied,* 498 U.S. 957,

111 S.Ct. 384, 112 L.Ed.2d 395 (1990) ("Before the government will be estopped ... two additional elements must be satisfied beyond those required for traditional estoppel. First, a party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.") (citations omitted).

Therefore, defendant is entitled to summary judgment on both the issue of dissipation of assets and on the issue of estoppel.

### C. Application of Levy Proceeds

In an effort to collect on plaintiffs' taxes due, the IRS levied ASM's accounts receivable, including accounts receivable due from Todd Construction. Pltfs. Exh. 8 (Appdx. 20 and 21). In response to the levy, Todd Construction made two receivables payments to the IRS. The first, on February 5, 1996, in the amount of $3,747.53 and the second on July 11, 1996, in the amount of $3,878.86. Plaintiffs contend that the IRS improperly applied the first check to PMC's taxes, rather than to ASM's taxes due. Plaintiffs also contend that the second payment was improperly applied to ASM's non-trust fund taxes and statutory additions in second quarter 1994, rather than to the trust fund taxes.

With respect to the first check, plaintiffs' argument is unconvincing. The designation on the check is "93–1029344." Pltfs. Exh. 32 (Appdx.20–4). This number is the employer identification number for PMC, not Rocha Enterprises or ASM. Janssen Decl. ¶ 19. Accordingly, defendant credited this tax levy payment to PMC. The defendant's allocation was not in error. Todd Construction designated on the payment that it was for receivables

owed to EIN "93–1029344," accordingly, the defendant properly credited the amounts to PMC. However, the court questions whether Todd Construction's placement of PMC's employer identification number on the check should be a sufficient basis for the IRS to continue to fail to credit ASM's account for these funds. There is no evidence before the court regarding whether Todd Construction merely made a clerical error or whether Todd Construction in fact owed the receivable at issue to PMC. If Todd Construction merely made a clerical error, it is likely that the IRS should credit the amount of this first check to ASM. If Todd Construction in fact owed the receivable to PMC, the resolution becomes less clear. Because there are issues of fact surrounding the circumstances of Todd Construction's payment of this first check that could affect ASM's tax liability, the court declines to grant summary judgment on the issue of Todd Construction's first check.

■ It is undisputed that the second check contained ASM's EIN on the front and that the IRS applied that check to ASM's tax liability. However, plaintiffs contend that defendant improperly allocated the second check to statutory additions first and then to the non-trust fund portion of the taxes. Plaintiffs do not dispute that involuntary payments, such as those made pursuant to a tax levy, may be allocated as the IRS chooses. However, plaintiffs contend that because they had an agreement with the IRS agent Janssen to accept installment payments on ASM's promissory note in lieu of levying on the receivables, the payments by Todd Construction are voluntary payments rather than involuntary payments. Plaintiffs' argument is unconvincing.

The evidence demonstrates that Hanson failed to make any installment payments on the ASM promissory note in December 1994. Agent Janssen, at most, agreed not to levy on ASM's receivables as long as Hanson made payments on ASM's promissory note. When Hanson stopped making payments, the IRS was free to levy on ASM's receivables. The IRS issued the notice of levy to Todd Construction regarding receivables owed to ASM for taxes owed by ASM on September 8, 1995. Pltfs. Exh. 8 (Appdx.20–1). Accordingly, the IRS levied on ASM's accounts receivable only after Hanson failed to make any further voluntary payments on the ASM note. Although plaintiffs and the IRS may have had an agreement under which the payments on ASM's promissory note would be considered voluntary payments, once Hanson stopped making payments under the note and the IRS was required to levy on ASM's assets, the payments ceased to be voluntary and became involuntary.

The Ninth Circuit has defined an involuntary payment as " 'one made pursuant to judicial action or some form of administrative seizure, like a levy.' " *Tull v. United States*, 69 F.3d 394, 396–97 (9th Cir. 1995) (quoting *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797, 802 (9th Cir. 1987)). In this case, the IRS issued notices of levy on Todd Construction regarding ASM's receivables. The evidence demonstrates that the receivables were paid pursuant to a levy and are therefore considered "involuntary" payments. Accordingly, the IRS may allocate them in its chosen manner, which includes allocation to statutory additions and non-trust fund taxes first.

Plaintiffs fail to create a material issue of fact regarding the allocation of the payments by Todd Construction. Accordingly, defendant's motion for summary judgment is granted with respect to this issue.[7]

---

7. Plaintiffs also contend that the IRS failed to     credit other payments of receivables. Howev-

## IV. Calculation

Defendant is entitled to summary judgment on all of the issues that plaintiffs raised. The court also notes that defendant has presented evidence supporting plaintiff's tax liability in the amount of $71,376.06.[8] However, defendant has failed to produce evidence regarding how it calculated the penalties or interest on the amount of $71,376.06 to reach plaintiffs' alleged total owed of $109,800.94.

Therefore, the court declines to award defendant summary judgment on the issue of the total amount of plaintiffs' tax liability owed.

## CONCLUSION

Defendant's second motion for summary judgment (#50) is GRANTED IN PART and DENIED IN PART as set forth in the above opinion.

IT IS SO ORDERED.

---

er, plaintiffs produced no evidence that additional amounts were paid. Plaintiffs produced the declarations of Marc Jacobs and of David Richardson. However, in both of these, the declarants state that they "believe" their companies paid the IRS or that they "recall" checks being issued. Jacobs Decl. ¶5; Bailey Decl. ¶2. However, neither declarant could locate cancelled checks to support their statements. These declarations were sworn to in mid-July. Plaintiffs have not updated the record before the court with any cancelled checks supporting these claims. Therefore, plaintiffs have not come forth with sufficient evidence that any such checks were actually issued or paid to the IRS.

8. This is derived from defendant's evidence of $75,123.59 as set out in the attachment to this opinion, less the $3747.53 payment from Todd Construction which the IRS may or may not be improperly applying to Portland Mechanical.

Exhibit A - Rocha Taxes

| Tax Period | | FICA (NTF) employer | FICA (TF) employee | Tax withheld (TF) | Total e'ee amt withheld (D+E) (TF) | Stat. Additions assessed | Tax Only Due (C+D+E) | Total Employment Taxes Due (C+D+E+G) |
|---|---|---|---|---|---|---|---|---|
| | | C | D | E | F | G | H | I |
| 2Q 1993 | Amount | $11,250.33 | $11,250.33 | $18,166.52 | $29,416.85 | $0.00 | $40,667.18 | $40,667.18 |
| | Paid | $11,250.33 | $11,250.33 | $18,166.52 | $29,416.85 | $0.00 | $40,667.18 | $40,667.18 |
| | Balance | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 3Q1993 | Amount | $11,016.76 | $11,016.76 | $17,292.11 | $28,308.87 | $7,972.84 | $39,325.63 | $47,298.47 |
| | Paid | $11,016.76 | $11,016.76 | $2,079.75 | $13,096.51 | $4,487.02 | $24,113.27 | $28,600.29 |
| | Balance | $0.00 | $0.00 | $15,212.36 | $15,212.36 | $3,485.82 | $15,212.36 | $18,698.18 |
| 4Q1993 | Amount | $8,312.71 | $8,312.71 | $13,393.53 | $21,706.24 | $0.00 | $30,018.95 | $30,018.95 |
| | Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Balance | $8,312.71 | $8,312.71 | $13,393.53 | $21,706.24 | $0.00 | $30,018.95 | $30,018.95 |

withholdings owing (1993) **$36,918.60**

| Tax Period | | FICA (NTF) employer | FICA (TF) employee | Tax withheld (TF) | Total e'ee amt withheld (D+E) (TF) | Stat. Additions assessed | Tax Only Due (C+D+E) | Total Employment Taxes Due (C+D+E+G) |
|---|---|---|---|---|---|---|---|---|
| 4Q1994 | Amount | $1,999.46 | $1,999.46 | $1,620.47 | $3,619.93 | $0.00 | $5,619.39 | $5,619.39 |
| | Paid | $795.56 | $0.00 | $0.00 | $0.00 | $0.00 | $795.56 | $795.56 |
| | Balance | $1,203.90 | $1,999.46 | $1,620.47 | $3,619.93 | | $4,823.83 | $4,823.83 |
| 1Q1995 | Amount | $591.52 | $591.52 | $571.92 | $1,163.44 | $0.00 | $1,754.96 | $1,754.96 |
| | Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Balance | $591.52 | $591.52 | $571.92 | $1,163.44 | | $1,754.96 | $1,754.96 |
| 2Q1995 | Amount | $563.75 | $563.76 | $507.44 | $1,071.20 | $0.00 | $1,634.95 | $1,634.95 |
| | Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Balance | $563.75 | $563.76 | $507.44 | $1,071.20 | | $1,634.95 | $1,634.95 |

withholdings owing (1994+5) $5,854.57

Total Liability

Exhibit A - Rocha Taxes

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 37 | | | | | Rocha 1993-5 | $42,773.17 | | | |

Exhibit B - ASM Taxes

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H | I |
| Tax Period | | FICA (NTF) employer | FICA (TF) employee | Tax withheld (TF) | Total e'ee amt withheld (D+E) | Stat. Additions assessed | Tax Only Due (C+D+E) | Total Employment Taxes Due (C+D+E+G) |
| | | | | | | | | |
| | | | | | | | | |
| 2Q1994 | Amount | $2,234.05 | $2,234.05 | $3,431.88 | $5,665.93 | $3,442.32 | $7,899.98 | $11,342.30 |
| | Paid | $436.54 | $0.00 | $0.00 | $0.00 | $3,442.32 | $436.54 | $3,878.86 |
| | Balance | $1,797.51 | $2,234.05 | $3,431.88 | $5,665.93 | $0.00 | $7,463.44 | $7,463.44 |
| | | | | | | | | |
| 3Q1994 | Amount | $4,118.10 | $4,118.10 | $8,012.82 | $12,130.92 | $0.00 | $16,249.02 | $16,249.02 |
| | Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Balance | $4,118.10 | $4,118.10 | $8,012.82 | $12,130.92 | $0.00 | $16,249.02 | $16,249.02 |
| | | | | | | | | |
| 4Q1994 | Amount | $2,261.81 | $2,261.81 | $4,231.18 | $6,492.99 | $0.00 | $8,754.80 | $8,754.80 |
| | Paid | $2,261.81 | $2,261.81 | $737.61 | $2,999.42 | $0.00 | $5,261.23 | $5,261.23 |
| | Balance | $0.00 | $0.00 | $3,493.57 | $3,493.57 | $0.00 | $3,493.57 | $3,493.57 |
| | | | | | | | | |
| 1Q1995 | Amount | $3,060.00 | $3,060.00 | $8,000.00 | $11,060.00 | $0.00 | $14,120.00 | $14,120.00 |
| | Paid | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | Balance | $3,060.00 | $3,060.00 | $8,000.00 | $11,060.00 | $0.00 | $14,120.00 | $14,120.00 |

Total Liability
Rocha $32,350.42

Total ASM and
Rocha together $75,123.59