United States Court of Appeals,

Fifth Circuit.

No. 90–1922.

Robert L. CASH and Evelyn L. Cash, Plaintiff–Appellants,

v.

UNITED STATES of America, Defendant–Counter Plaintiff–Appellee,

v.

Randall C. BLOCK, Counter Defendant–Appellant.

June 1, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Taxpayers appeal the district court's adverse judgment. They argue that the Internal Revenue Service's levy on accounts receivable of LTS Optical, Inc. (the taxpayers' corporation) satisfied the corporation's tax liability, and thereby relieved taxpayers of any liability under § 6672 of the Internal Revenue Code. The United States challenges the taxpayers' standing to raise this claim. We affirm.

I.

LTS Optical, Inc. (LTS) was formed as a Texas corporation in late 1983 with headquarters in Lubbock, Texas. The corporation operated six wholesale optical laboratories in the Southwest. Evelyn Cash, her husband Robert and Randall Block were the shareholders and officers of the corporation. (They are referred to collectively as "the taxpayers".)

The corporation fell behind in paying over to the United States the income and social security taxes that had been withheld from the wages of its employees, as well as its own share of social security taxes. For the fourth quarter of 1984, the first and fourth quarters of 1985 and the first and

second quarters of 1986, LTS withheld employment taxes totalling $243,263.50, but paid over only $93,257.55. Accordingly, the Internal Revenue Service (IRS) assessed the unpaid taxes against LTS.

In July 1986, the IRS issued notices of levy against the corporation's accounts receivable which had a face value of $200,000. The IRS notified LTS's debtors to remit the amounts owed to LTS directly to the Internal Revenue Service. The IRS also seized and sold a computer belonging to LTS. As remittances on LTS's accounts receivable were received, the IRS credited the payments to LTS's tax liability. The IRS collected $73,039.40 from the levies which it applied to the tax deficiency. After these credits were applied and interest and statutory penalties added, approximately $84,000 of the corporation's withholding tax liability remained unpaid. The IRS then credited approximately $5,700 in income tax refunds due Robert and Evelyn Cash against the tax liability.

The Cashes brought this suit for refund. The Government counterclaimed for the remaining taxes due and joined Randall Block in the action. The taxpayers answered the counterclaim contending that they were not responsible persons who willfully failed to pay over the withheld taxes. In addition, the taxpayers asserted that the tax had been discharged as a result of the IRS's levy on LTS's accounts receivable and subsequent handling of the asset.

The district court granted the Government's motion in limine to exclude from trial any evidence relating to how the IRS handled the seized accounts receivable. The court concluded that this evidence did not relate to any factual issue for jury decision. It reasoned, based upon the taxpayers' proffered evidence, that the IRS' collection procedures did not as a matter of law make out taxpayers' defense that the debt was discharged.

The taxpayers offer of proof included the depositions of the IRS case agent and Randall Block. According to the deposition of the IRS agent who handled the levy, one notice of levy was sent to the account debtors. She made no other effort to collect the receivables, although her usual

practice was to follow up once with a phone call or letter. The agent had a number of discussions with Block as remittances were received from the account debtors. She also sent Block at least a partial list of which accounts had paid and the amounts collected.

Randall Block testified in his deposition that when the IRS seized the company's computer, they also seized the accounts receivable data stored in the computer and the only physical copy of the accounts receivable listing. The IRS gave him no notice that the computer or records would be seized and apparently gave him no opportunity to make a copy for himself from the computer database. The data stored in the computer's memory was erased after the seizure. After the levy, Block contacted some of his customers who owed LTS money to encourage them to pay. He met with little success.

The court presented the jury the issue of the taxpayers' responsibility and willfulness in failing to pay over the withholding taxes of LTS's employees. The jury concluded that Robert Cash and Randall Block were responsible and willful for the fourth quarter of 1984, the first and fourth quarters of 1985, and the first two quarters of 1986 (all quarters with deficiencies). The jury found Evelyn Cash responsible for all five quarters but willful only for the first two quarters of 1986.

The taxpayers filed a motion for JNOV. In their motion, the taxpayers argued that as a result of the levy on LTS's accounts receivable, LTS's withholding tax liability should be considered discharged. Once LTS's tax liability is satisfied, taxpayers contend that their liability as responsible parties is also discharged. The district court denied their motion and the taxpayers appeal.

## II.

An explanation of the statutory background is helpful to understand both the merits of this appeal as well as the taxpayers' standing to appeal. The sole question presented on appeal relates to taxpayers' liability as "responsible parties" for unpaid federal withholding taxes. Sections 3102(a) and

3402(a) of the Internal Revenue Code (26 U.S.C.) require employers to withhold federal social security and income taxes from the wages of their employees. The withheld taxes constitute a special fund held in trust for the benefit of the United States under § 7501 of the Code. *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970). If an employer withholds these trust fund taxes but fails to pay them over to the United States, the employee is nevertheless credited with payment. *Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Newsome,* 431 F.2d at 744. Thus, unless the Government has recourse against the person or persons responsible for nonpayment, the taxes will be lost. *Id.*

Not surprisingly, the Internal Revenue Code contains a provision allowing collection from the persons responsible for the nonpayment. Section 6672(a) of the Code provides, in part:

> [A]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Although denoted a penalty in the statute, the liability imposed by § 6672(a) is not penal in nature because it only recovers for the government the same amount the employer was required to withhold and remit. Section 6672 simply insures that the taxes are paid. *Id.* at 745, citing *Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963). Consistent with this purpose, the IRS follows a policy of collecting the delinquent taxes only once. Therefore, if the employer corporation pays the required withholding, then any tax assessment against responsible parties will be abated to the extent of the payment.

At the same time, however, it is well established that the liability imposed upon a responsible person under § 6672 is separate and distinct from that imposed on the employer under §§ 3102 and 3402 of the Internal Revenue Code. *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th Cir.1986); *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983); *Hornsby v. I.R.S.,* 588 F.2d 952, 954 (5th Cir.1979). The Service need not attempt to collect first from the corporate employer

or its assets before assessing penalties and pursuing collection from responsible persons under § 6672. *Huckabee Auto Co.,* 783 F.2d at 1549; *Hornsby,* 588 F.2d at 954.

III.

Before considering the merits of the taxpayers' appeal, we must first address whether they have standing to complain of the IRS's failure to consider LTS's tax debt as satisfied. The Supreme Court has stated the test for standing as follows:

> [T]he standing question in its Art. III aspect "is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." ... In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming the justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision.

*Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450, 460 (1976) (internal citations omitted, emphasis in original).

Applying this test, the first requirement is that the plaintiff-taxpayers must have suffered an injury that can be fairly traced to the challenged action of the defendant, IRS. *Id.* at 41–42, 96 S.Ct. at 1925–26. The IRS argues that the taxpayers have not been injured by the IRS's levy against the assets of LTS. This is true, IRS contends, because the taxpayers' liability as responsible persons under § 6672 is separate and distinct from LTS's corporate liability under §§ 3102 and 3402. The IRS clearly could have pursued collection of the tax from the taxpayers individually without levying on LTS's assets. In this case, however, they did not do so. Due to the structure of the tax, any sums unpaid by the corporation are assessed against the taxpayers as responsible parties for the collection and payover. If the IRS receives payments from the corporation either voluntarily or by IRS levy on corporate assets, the taxpayers' liability as responsible parties must be reduced. Thus, if the taxpayers can establish that the IRS failed to give LTS sufficient credit for the seized accounts receivable, taxpayers' liability as responsible parties is overstated. If so, they have been injured in fact and the alleged harm can be clearly traced to the IRS's handling of the accounts receivable.

The second requirement for standing is that the relief sought, if granted, must redress the injured suffered. If the taxpayers are granted their requested relief, i.e. that their tax liability be reduced by the face value of the accounts receivable, there would be no remaining unpaid withholding tax. Due to the Service's policy of only collecting the tax once, it could not assess a penalty under § 6672 against the taxpayers. Thus, the taxpayers also satisfy the second requirement for standing. We therefore conclude that taxpayers' have standing to present this argument on appeal. We now turn to the merits of their claims.

IV.

The taxpayers contest the judgment against them on the ground that the taxes assessed against them should be considered paid. First, they contend that the IRS was required to sell the levied upon accounts receivable and because it did not sell the accounts the debt should be considered discharged.[1] Second, the taxpayers complain of the IRS's handling of the levied on accounts. When the IRS levied on the accounts, the taxpayers were precluded from attempting to collect any amounts due to LTS. The taxpayers argue that even if they were allowed to make a collection effort, that possibility was foreclosed when the IRS seized and destroyed the corporate records of the accounts. Relatedly, the taxpayers complain of the IRS' collection efforts. The taxpayers contend that IRS' efforts in sending an initial notice of levy to the debtors with no follow up was inadequate. They also complain that the IRS did not release the levy or notify them when they abandoned collection of particular accounts. Taxpayers conclude that these acts combined to give the IRS dominion and control over the accounts receivable which obligated the IRS to credit the corporation's tax liability for the value of receivables.

As an initial matter, we reject the taxpayers' contention that § 6335(b) requires the IRS to

---

[1]The taxpayers specifically argue that a "levy" is the same as a "seizure" under the Internal Revenue Code and Regulations and that all seized property must be sold or the full value of the property credited against the tax liability of the owner of the property. As our analysis does not rest on whether the IRS levied upon or seized LTS's accounts receivable, we need not address whether the IRS levy in this case was a "seizure" under § 6335(b).

sell all property it seizes.[2]  We read that section as merely setting forth the procedures the Service must follow when it does sell such property.  Other sections of the same subchapter, "Subchapter D —Seizure of Property for Collection of Taxes", indicate that the Secretary has discretion over the decision to sell.  First, § 6331 states "In any case in which the Secretary may levy upon property or rights to property, he *may* seize and sell such property or rights to property (whether real or personal, tangible or intangible)."  (emphasis added).  Use of the word "may" in a statute is generally read to confer discretion.  *See United States v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983).

Second, Congress also made it clear that when the levied upon property is a debt owed to the taxpayer, such as an account receivable, the levy may be satisfied by paying over to the Government the money owed to the taxpayer.  *See* § 6332(a).[3]  Third, § 6335(f) specifically grants the Secretary the discretion not to sell seized property even when the owner of the property requests a sale.[4]

---

[2]Section 6335(b) provides in pertinent part:

> The Secretary shall as soon as practicable after the seizure of the property give notice to the owner, in the manner prescribed in subsection (a), and shall cause a notification to be published....  Such notice shall specify the property to be sold, the time, place, manner, and conditions of the sale thereof.  ...

[3]Section 6332(a) provides in pertinent part:

> any person in possession of (*or obligated with respect to* ) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (*or discharge such obligation* ) to the Secretary, ...  [Emphasis added.]

*See also* § 6342(a) which provides in pertinent part:

> Any money realized by proceedings under this subchapter (*whether by seizure, by surrender under section 6332, ... or by sale of seized property* ) ... shall be applied as follows....  [Emphasis added.]

[4]Section 6335(f) provides as follows:

> The owner of any property seized by levy may request that the Secretary sell such property within 60 days after such request (or within such longer period as may be specified by the owner).  The Secretary shall comply with such request unless the Secretary determines (and notifies the owner within such period) that such compliance would not be in the best interests of the United States.

Courts have also noted (either directly or by accepting without comment) that when levying on a debt, the IRS may collect the debt on behalf of the taxpayer from the person owing the taxpayer by notice of levy, without conducting a sale.[5] Thus, because the IRS has no duty to sell levied upon accounts receivable, the taxpayer is not automatically entitled to full credit against his tax deficiency for the face value (or net value) of the account seized.

The taxpayers also complain that the IRS, in addition to levying on the accounts, destroyed any residual value of the uncollected accounts by seizing and destroying the corporate records of the accounts and failing to make any collection effort. Without these records, the taxpayers allege that they lost the ability to pursue the remaining uncollected accounts. In addition, when the IRS decided to "write off" the accounts as uncollectible, it did not inform the taxpayer or release the levy so the taxpayer could attempt to salvage any residual value of the accounts. The taxpayers argue that these acts reflect such IRS dominion and control over the asset that the IRS effectively appropriated the entire value of LTS's accounts receivable. As a result, the taxpayers contend that the IRS became obligated to credit LTS's tax liability for the value of the asset seized at the time of seizure.

The taxpayers rely on two cases to support their position. In *United States v. Pittman,* 449 F.2d 623 (7th Cir.1971), the IRS served notice of levy on the taxpayer's nominee, who held title to certain rental property belonging to the taxpayer. After the nominee turned the property over to the IRS, the Service managed the property, collected rents and solicited tenants. Notices of levy were served on the tenants, notifying them that they should pay their rent directly to the IRS. During its stewardship, the IRS allowed the property to deteriorate; several houses on the property burned down or were condemned by the local government authorities. The IRS then informed the taxpayer that it regarded him as the equitable owner of the property. The Seventh Circuit stated:

---

[5]*See Field v. United States,* 263 F.2d 758, 763 (5th Cir.1959); *In re Cherry Valley Homes, Inc.,* 255 F.2d 706, 707 (3d Cir.1958), *cert. denied,* 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); *Shawnee State Bank v. United States,* 735 F.2d 308, 309 (8th Cir.1984); *Sgro v. United States,* 609 F.2d 1259, 1263 (7th Cir.1979); *Farmers–Peoples Bank v. United States,* 477 F.2d 752, 754 (6th Cir.1973).

> Where the Government serves notice of levy ... and exercises the rights of an owner to control property by insuring it, renting it and compelling payment of rent to itself and no one else, so that the taxpayer justly concludes he has no further right to deal with the property, there has been an effective levy and seizure within the meaning of 26 U.S.C. § 6331 and the taxpayer is entitled to credit for the property seized.

449 F.2d at 627. The court concluded that if taxpayer is not given proper credit for the seizure, the seizure would violate the takings clause of the 5th Amendment to the United States Constitution. *Id.* at 626, citing *Springer v. United States,* 102 U.S. 586, 593–94, 26 L.Ed. 253 (1880). Accordingly, the taxpayer was entitled to a credit for the value of the house when the levy was issued. The case was remanded to determine the value of the property at the time of the levy.

In *In re Barlow's, Inc.,* the IRS levied on a fully-earned account receivable of Barlow's, Inc. for unpaid withholding and FICA taxes. 36 B.R. 826 (Bankr.Va.1984), *aff'd,* 53 B.R. 986 (Va.1984), *aff'd,* 767 F.2d 1098 (4th Cir.1985). Without Barlow's participation, the IRS and the account debtor, Western Development Corporation, established a payment schedule for the receivable. After paying only $27,000 of over $102,000 due, Western defaulted on the payment agreement. The Government made no effort to enforce the payment agreement. The district court and the Fourth Circuit, relying heavily on *Pittman,* affirmed the bankruptcy court's holding:

> that the IRS went well beyond a mere service of levy ... When the IRS levied on the account receivable and subsequently entered into a payment agreement with Western, the law prohibited plaintiff from pursuing Western for the account. IRC § 6332(d) (1976). Additionally, upon Western's failure to surrender the property, Western became liable to the United States for the value of the property not surrendered ... IRC § 6332(d)(1) (Supp.1982). In addition, there is no indicated that the government advised the plaintiff of the default.
>
> Because of the IRS's exercise of dominion and control over the account receivable in that it failed to proceed with a sale, and failed to proceed to collect the account receivable when Western defaulted, plaintiff should be granted a credit against its tax liability in the amount of the value of the account receivable levied upon by the IRS.

53 B.R. at 989–90.

The taxpayers argue that the facts of this case support a result similar to that approved by the courts in *Barlow* and *Pittman.* We agree with the remedy allowed the taxpayers in *Pittman* and

*Barlow.*  However, because the facts in today's case are materially different from those cases, we reach a different result.

The facts of this case are distinguishable from those in *Barlow.*  In this case, the IRS did not alter the terms of the account debtor's liability by negotiating new payment terms with the various account debtors.  We decline to hold as a matter of law that every time the IRS levies upon and seizes records of accounts receivable it has dominion and control over the asset that entitles the taxpayer to a credit for the value of the receivables at the time of the levy.  The fact of the levy does not shift the collection risk to the government.

Neither is the IRS required to expend any particular level of effort to collect the levied upon accounts when it has not negotiated new terms with the account debtor.  No statute or case law imposes such a requirement.  The IRS may generate more revenue at a lower cost by simply collecting the easy paying accounts without expending the time and money to pursue the taxpayers' unwilling debtors.  In the ordinary case, the IRS need only ensure that the taxpayer is credited with the amount actually collected on the accounts.

In addition, although the taxpayers in this case are basically dissatisfied with the IRS collection efforts and the amount the IRS collected, their proffered evidence does not show that more vigorous efforts would have yielded additional collections.  On this basis *Pittman* can also be distinguished.  Although the taxpayers complain that the IRS physically destroyed the corporate records of the accounts, that act is not analogous to allowing real estate to physically deteriorate. There is no showing that the destruction of the records affected the value of the accounts.  Block knew the identity of some of the accounts.  After the levy, he contacted some of his account debtors to urge them to pay.  These efforts met with little or no success and the record does not demonstrate that further collection efforts by Block would have yielded any greater success.  The proffered evidence does not substantiate taxpayers' theory that their lack of records and the IRS's lack of

collection effort destroyed the value of the accounts receivable.

The taxpayers also complain that the IRS did not release the levy or inform them when they abandoned collection of certain of the accounts. We see no reason to require the IRS to release the levy as long as the taxes remain unpaid. If the account debtors decide to pay the account, the IRS is entitled to those funds. In addition, the taxpayers offer of proof indicates that the IRS case agent had numerous discussions with Block about the progress of the collections on the accounts. There is no indication that the taxpayers requested and were denied any information about the IRS handling of the levy. Finally, as the IRS points out, if the taxpayers were dissatisfied with the level of collection effort by the IRS and felt that the value of the asset was greater than the value being received by the IRS in the liquidation process, they were free to redeem the accounts receivable by paying the tax deficiency. *See* § 6337(a).

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.