Arthur BABCOCK, Plaintiff,

v.

UNITED STATES of America, Defendant,

United States of America, Counterclaimant,

v.

Arthur Babcock; Dante Jumanan; and Thomas R. Soper, Counterclaimant-defendants,

Dante Jumanan; and Thomas R. Soper; Counterclaimants,

v.

United States of America, Counterclaimant–Defendant.

No. CV 08–08467 SJO (FFMx).

United States District Court, C.D. California.

Dec. 22, 2009.

William M. Weintraub, Jeffer Mangels Butler and Marmaro, Los Angeles, CA, for Arthur Babcock.

Thomas Derrick Coker, Office of U.S. Attorney, Los Angeles, CA, for United States of America.

Dan P. Sedor, Jeffer Mangels Butler and Marmaro, Los Angeles, CA, for Arthur Babcock, Dante Jumanan and Thomas R. Soper.

**AMENDED ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF THE UNITED STATES OF AMERICA, DEFENDANT/COUNTERCLAIMANT AND AGAINST COUNTERCLAIM DEFENDANTS ARTHUR BABCOCK, DANTE JUMANAN, AND THOMAS R. SOPER**

**ORDER DENYING PLAINTIFF'S AND COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT**
[Docket Nos. 15 and 19]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendant/Counterclaimant Defendant the

United States of America's ("Defendant U.S.A.") Motion for Summary Judgment, filed June 23, 2009, and Plaintiff Arthur Babcock and Counterclaimants Dante Jumanan and Thomas R. Soper's (collectively, "Taxpayers") Motion for Summary Judgment, filed August 21, 2009. The respective parties filed Oppositions and Replies. The Court found this matter suitable for disposition without oral argument and vacated the two motions set for September 21, 2009. *See* Fed.R.Civ.P. 78(b). For the following reasons, Defendant U.S.A.'s Motion is GRANTED and Taxpayers' Motion is DENIED.

## I. *BACKGROUND*

Arthur Babcock ("Babcock"), Dante Jumanan ("Jumanan"), and Thomas R. Soper ("Soper") founded the AES Construction business in 1993. (*See* Pl.'s & Counter-Claimants' Notice of Mot. for Summ. J. ("Pl.'s Mot.") 3; *see* Plaintiff & Counter-Claimants' Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s Statement of Facts") 2.) Taxpayers' business grew and was then incorporated as AES Construction Group, Inc. ("Construction") in 1998, and as AES Management, Inc. ("Management") in 2001. (*See* Pl.'s Mot. 3; *see* Pl.'s Statement of Facts 2.) "Construction was engaged in the business of constructing commercial, industrial, and municipal construction projects." (Pl.'s Statement of Facts 2.) "Between January 2002 and June 2003 (hereafter, the "Period at Issue"), the Taxpayers were shareholders, officers and employees of Construction." (Pl.'s Statement of Facts 2.) Management was engaged in the business of operating a payroll service. (*See* Pl.'s Mot. 3.) "The Taxpayers also were officers and employees of Management; Soper was a shareholder of Management." (Pl.'s Statement of Facts 3.) Construction and Management (collectively, the "Companies") are now defunct and have no assets.

(Pl.'s. Mot. 3; Def.'s Mot. for Summ. J. Against Pl. and CounterClaim Defs. ("Def.'s Mot."); Exs. Submitted in Supp. of Def.'s Mot. for Summ. J. Against Pl. & CounterClaimants ("Def.'s Exs.") Ex. 101.)

During the Period at Issue, the Companies were required by federal law to make employment tax deposits electronically using the Electronic Federal Tax Payment System ("EFTPS" or "System"). (Pl.'s Statement of Facts 3; Def.'s Mot. 4.) The Companies enrolled in EFTPS and made certain employment tax deposits *electronically* for certain payroll tax periods, as they were required to do. (Def.'s Exs. Ex. 101.) "The EFTPS provided two interchangeable payment methods for employers to make federal tax deposits, namely EFTPS online (internet) and EFTPS by phone (Automated Voice Response System)." (Def.'s Exs. Ex. 101.) When using EFTPS, the Companies were required to provide specific information when prompted by the Automated Voice Response System. "Under the System, a taxpayer can specify the tax period for which deposits are made by entering the 2–digit tax year and 2–digit month of each payment. There is, however, no means by which a deposit made via the EFTPS can be designated between a corporation's non-trust fund and trust fund payroll tax liabilities." (Def.'s Mot. 4; *see* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 2.)

### A. *Construction and Management Third and Fourth Quarters 2002 and Second Quarter of 2003*

Construction did not make any payroll tax deposits for the last three payroll periods of the third quarter of 2002, namely the payroll periods for September 13, September 20, and September 27. (Def.'s Mot. 5; Def.'s Exs. Ex. 101.) For the fourth quarter of 2002, Construction did not make any payroll tax deposits for pay-

roll periods in October, the fifth payroll period in November, or the four payroll periods in December. (Def.'s Exs. Ex. 101.) Additionally, "Construction did not submit to the IRS written instructions for the application of any partial payroll tax deposits made during 2002 and 2003." (Def.'s Mot. 5.) Management did not make payroll tax deposits for payroll periods in September, October, November, or December 2002. (Def.'s Exs. Ex. 101.) Management did not make payroll tax deposits for the second payroll periods in May and June 2003, either. (Def.'s Exs. Ex. 101.) Like Construction, "Management did not submit to the IRS written instructions for the application of any partial payroll tax deposits made." (Def.'s Mot. 6.)

As early as the first quarter of 2003, financial difficulties compelled the Taxpayers to "instruct the payroll accounting staff for both [C]ompanies to apply all funds available for payroll tax payments exclusively to the trust fund portion of the payroll taxes due." (Def.'s Exs. Ex. 106, 6; Pl.'s Mot. 3.) The Companies' accounting personnel, including Cesar Santiago, "were unable to determine any way to so allocate the weekly payroll tax payments made through the [EFTPS] and conveyed this to [the] Taxpayers." (Def.'s Exs. Ex. 106.) Mr. Santiago contacted the IRS, but it was "unable to provide [him] with an answer." (Def.'s Exs. Ex. 106, 6–7.) Consequently, "any payments made by [the] Taxpayers through the [EFTPS] were automatically applied to both the trust fund portion and the employer's portion of the payroll tax obligation." (Def.'s Exs. Ex. 106, 7.) The Taxpayers maintain that "[a]t the time that the Companies recommenced making payroll tax payments, [they] were cognizant of the fact that prior quarter payroll tax liabilities—including the trust fund portion of such liabilities—remained delinquent." (Pl.'s Mot. 5.)

Taxpayers soon thereafter retained Karrie L. Bercik as legal counsel to instruct them with regards to designating payroll taxes, but after some discussion with IRS personnel, Ms. Bercik was unable to resolve the matter. (Def.'s Exs. Exs. 106, 107.) The Taxpayers contend that "the Companies' personnel responsible for making EFTPS payroll deposits were unable to determine any way to allocate the deposits exclusively to the trust fund portion of the current or delinquent payroll liabilities, and were given no guidance from the IRS in response to telephone inquiries." (Pl.'s Mot. 6.) On July 6, 2004, after trust fund recovery penalties were assessed, Ms. Bercik "filed a formal written protest and appeal on behalf of one of the Taxpayers" against the IRS. (Def.'s Exs. Exs. 106, 107.)

### B. Tax Assessments Against the Taxpayers

On July 6, 2006, the IRS entered assessments against the Taxpayers in the amounts of (1) $94,380.09, (2) $355,536.41, and (3) $53,375.74, with respect to income taxes and Federal Insurance Contribution Act ("FICA") taxes withheld from wages and salaries of Management employees during the third and fourth quarters of 2002, and the second quarter of 2003, respectively, pursuant to 26 U.S.C. § 6672 (" § 6672").[1] (See CounterClaimants' An-

---

**1.** 26 U.S.C. § 6672 states that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part

swer to Def.'s CounterClaim ¶¶ 4, 7, 10, 13, 19, 22; *see* 26 U.S.C. § 6672.) The IRS also entered assessments against the Taxpayers in the amounts of (1) $72,174.23 and (2) $122,358.62, with respect to income taxes and FICA taxes withheld from wages and salaries of Construction employees during the third and fourth quarters of 2002, respectively, pursuant to 26 U.S.C. § 6672. (*See* CounterClaimants' Answer to Def.'s CounterClaim ¶¶ 4, 7; *see* 26 U.S.C. § 6672.)

Principally, Taxpayers argue that the IRS' refusal to designate certain of the Companies' employment tax deposits to the trust fund portion of prior quarters' delinquencies is incorrect, improper,[2] and unfair.[3] (Pl.'s Statement of Facts 5; FAC ¶ 12.) The Taxpayers contend that prior to this litigation, they "attempted to convince the IRS though administrative appeals to allow [them] to designate certain of the Companies' employment tax deposits solely to the trust fund portion of the prior quarters' delinquencies, [but] the IRS refused to so reallocate those [deposits]." (Pl.'s Statement of Facts 5.) The Taxpayers therefore, seek to designate "(a) the application of the Third Quarter 2002 EFTPS [deposits] entirely to the Trust Fund Portion of the Companies' Third Quarter 2002 payroll tax liabilities, and (b) the application of the Subsequent

[deposits] entirely to the Delinquent Trust Fund Payments." (Pl.'s Statement of Facts 5.) As such, Taxpayers claim that the IRS' disallowance of their claims has resulted in (a) overpaying trust fund recovery penalties in the amount of $1,846.95, and (b) unlawful assessment of trust fund recovery penalties in the amount of $166,554.32 (attributable to the 9/30/2002 payroll tax period) and $166,554.32 (attributable to the 12/31/2002 payroll tax period). (Pl.'s Statement of Facts 5.)

The Taxpayers therefore, argue that they are entitled to recover $1,846.95 from Defendant U.S.A., and that they "are further entitled to a determination that the assessment against [them] for trust fund recovery penalties in the amount of $166,554.32 (attributable to the 9/30/2002 payroll tax period) and $371,767.49 (attributable to the 12/31/2002 payroll tax period) are unlawful and should be abated." (Pl.'s Statement of Facts 5–6.) Taxpayers seek an order compelling the IRS to reallocate the Companies' tax deposits, thereby reducing or eliminating the Taxpayers' personal liability. (Def.'s Mot. for Summ. J. 8.)

Defendant U.S.A. seeks judgment against Taxpayers for assessments made against Taxpayers, pursuant to § 6672, which provides recourse against responsi-

---

II of subchapter A of chapter 68 for any offense to which this section is applicable." 26 U.S.C. § 6672.

2. Specifically, Babcock states "[t]he IRS' failure to provide a mechanism for the designation of the EFTs [sic] of tax payments to a particular tax period, or as between trust fund and non-trust fund taxes, should not give the IRS the unilateral right to designate the application of voluntary payments of tax. Plaintiff should have the same right to designate the application of voluntary payments of tax. Plaintiff should have the same right to designate portions of voluntary tax payments by the Companies as any other taxpayer making

voluntary tax payments under Rev. Prov. 2006–26, but not making tax payments via EFTs [sic]." (FAC ¶ 12.)

3. Babcock states "[b]ecause it was impossible at the time of the EFTs of the Subsequent Payments to designate any portions of such payments to prior periods to cover the Delinquent Trust Fund Payments, it is unfair to now penalize Plaintiff for nonpayment of the Delinquent Trust Fund Payments. Therefore, any penalties paid by Plaintiff should be refunded and those penalties which have been assessed but not paid should be abated." (FAC ¶ 14.)

ble persons for unpaid trust fund taxes. (Def.'s Mot. 7.) Specifically, Defendant U.S.A. contends that Taxpayers are personally liable, jointly and severally, for "unpaid income and employment taxes withheld from the wages and salaries of the employees of AES Construction Group, Inc., in the amount of $194,532.85, and AES Management, Inc., in the amount of $503,292.24, as of July 6, 2004, plus accrued interest and other additions as provided by law." (Def.'s Mot. 2.)

### C. Characterization of the Tax Deposits

The parties vigorously disagree over whether the Taxpayers' tax deposits during the Period at Issue should be characterized as partial or complete. The Taxpayers argue that "weekly payment[s] [were] a partial payment by [the Companies] of [their] quarterly payroll deposit obligation." (Def.'s Exs. Ex. 106, 4.) Specifically, the Taxpayers contend that the Companies' deposits were partial because when deposits were made, the Companies still "had outstanding payroll delinquencies, against which the EFTPS deposits were 'partial payments.'" (Pl.'s Reply 4–5.) Defendant U.S.A. however, contends that each weekly deposit made by the Companies was a complete deposit of that period's obligation, so that none of the Taxpayers' deposits at issue can be characterized as partial. (Pl.'s Statement of Facts 7.)

The Court concludes that Defendant U.S.A.'s interpretation is correct. When the Companies made tax deposits during the Period at Issue, their deposits were complete deposits for the specific payroll period to which they were submitted. Each deposit made by the Companies was therefore made in full, meaning that any liability for that specific payroll period was extinguished once the Companies' deposit

was made. It is therefore proper to characterize the Companies' deposits during the Period at Issue as complete, even if the Companies were nonetheless, delinquent in making deposits for other separate payroll periods within the same quarter.

## II. DISCUSSION

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). A "material" fact is one that could affect the outcome of the case under the governing substantive law, and an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed.Cir.2008) (internal citation omitted).

In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted); *see Atlanta Attachment Co.*, 516 F.3d at 1365 (internal citation omitted); *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045 (Fed.Cir.2001) (internal citations omitted).

### A. 26 U.S.C. § 6672

■ The Internal Revenue Code requires employers to withhold federal income and social security taxes from the salaries and wages of employees. 26 U.S.C. § 3102(a) As the Ninth Circuit concluded in *Davis v. U.S.*, "[a]lthough an

employer collects this money each salary period, payment to the federal [G]overnment takes place on a quarterly basis. In the interim, the employer holds the collected taxes in trust for the government," pursuant to 26 U.S.C. § 7501(a). *Davis v. U.S.*, 961 F.2d 867, 869 (9th Cir.1992); *U.S. v. Energy Res. Co., Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); 26 U.S.C. § 7501(a). These taxes are consequently referred to as 'trust fund taxes'[4] because they are held "in trust" for the U.S. 26 U.S.C. § 7501(a); *Slodov v. U.S.*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Davis*, 961 F.2d at 869; *see Buffalow v. U.S.*, 109 F.3d 570 (9th Cir.1997)(holding that "[o]ther taxes owed by an employer are known as non-trust fund taxes."); *see Gephart v. U.S.*, 818 F.2d 469, 472 (6th Cir.1987) (holding that the withheld taxes are "not simply a debt; they are part of the wages of the employee, held by the employer in trust for the government.").

■ If an employer withholds and then fails to remit trust funds taxes, the Government credits each employee as if the funds had already been paid over to the Government. *Slodov v. U.S.*, 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) (holding that "[o]nce net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment."). Since the Government has no recourse against the employees, from whom the taxes are withheld, Congress has provided that the Government may collect an equivalent sum directly from individuals who are responsible for

collecting and paying over the taxes, pursuant to § 6672. *Id.* These individuals are commonly referred to as "responsible persons." *Slodov*, 436 U.S. at 244–46, 98 S.Ct. 1778. § 6672 is therefore, intended to provide the Government with a means of collecting from responsible persons those taxes the employer did not pay to the IRS. *Slodov*, 436 U.S. at 244–46, 98 S.Ct. 1778. For liability to attach under § 6672, a responsible person must be (a) a responsible party, and (b) must have willfully failed to pay the tax. *Alsheskie v. U.S.*, 31 F.3d 837 (9th Cir.1994). In the present action it is undisputed that the Taxpayers are responsible persons so that liability attaches to them under § 6672. *Id.*

The Taxpayers though, argue that the IRS' allocation of the Companies' deposits is unfair because the EFTPS does not provide a means for allocating between trust fund and non-trust fund taxes. The Taxpayers contend that the required use of the EFTPS deprived them of the opportunity to designate employment tax deposits to particular periods, and between trust fund and non-trust fund taxes. In response, Defendant U.S.A. claims that the Taxpayers cannot be relieved of their duty to pay the delinquent taxes due because § 6672 attaches without fault, the EFTPS must be regarded with deference by the Court, and in any event, any right of designation that taxpayers may be afforded, does not apply in this instance.

B. *The Electronic Federal Tax Payment System Should Be Afforded Deference by this Court.*

■ The EFTPS was developed in 1993 when section 523(a) of the North American

---

4. 26 U.S.C. § 7501(a) states, "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C. § 7501(a).

Free Trade Agreement Implementation Act, Public Law 103–182, 107 Stat.2057 (Dec. 8, 1993) was amended as Section 6302 of Title 26 of the U.S. Code. 26 U.S.C. § 6302(h).[5] In effect, the EFTPS represented Congress' desire to have the Treasury Department develop and implement an electronic system and prescribe regulations, as necessary for the collection of depository taxes. 26 U.S.C. § 6302(h). *See* 26 U.S.C. § 6302(h). Courts have consistently upheld the validity of such procedures authorized by the IRS for the collection of taxes. *See Brookhurst, Inc. v. U.S.* 931 F.2d 554, 556 (9th Cir.1991) (holding that "[i]f the [Internal Revenue] Code authorizes the [G]overnment to 'reassess' [a plaintiff's] tax liability and to collect by levy the reassessed taxes, [the court] must uphold the [G]overnment's collection of [the plaintiff's] 1983 fourth quarter employment taxes."); *see also F.E. Schumacher Co., Inc. v. U.S.*, 308 F.Supp.2d 819, 828–29 (N.D.Ohio 2004) (holding that "[t]he authority given by Congress in § 6302 to the Secretary of the Treasury over the collection of tax liabilities and the administration thereof is expansive ... Such an express delegation evinces the Congressional intent to provide the Secretary of the Treasury broad general authority over the collection of taxes ... As a result of this delegation by Congress, any Regulations made pursuant to § 6302(h), which are necessary for the development and implementation of the EFTPS, are considered to be legislative or substantive Regulations as opposed to those which merely interpret the Code. As such, Treasury Regulation § 31.6302–1(h) mandating

procedures by which deposits must be submitted in accordance with the EFTPS, is binding on the [c]ourt and may not be set aside unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute."); *see also U.S. v. Mead Corp.*, 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (holding that "[w]hen Congress has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation ... and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.").

The Supreme Court has also held that regulations promulgated by the IRS should be sustained, unless they are unreasonable and inconsistent with the Internal Revenue Code. Specifically, in *Bingler v. Johnson*, the Court concluded:

> (W)e do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.

*Bingler v. Johnson*, 394 U.S. 741, 749–51, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). In *Comm'r v. Portland Cement Co. of Utah*,

---

**5.** 26 U.S.C. § 6302(h) states that "[t]he Secretary shall prescribe such regulations as may be necessary for the development and implementation of an electronic fund transfer system which is required to be used for the collection of depository taxes. Such system shall be designed in such manner as may be

necessary to ensure that such taxes are credited to the general account of the Treasury on the date on which such taxes would otherwise have been required to be deposited under the Federal tax deposit system." 26 U.S.C. § 6302(h).

450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981), the Court similarly held:

> [Treasury] regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task of administering the tax laws of the Nation. We therefore must defer to Treasury Regulations that implement the congressional mandate in some reasonable manner. To put the same principle conversely, Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.

*Comm'r v. Portland Cement Co. of Utah,* 450 U.S. 156, 169, 101 S.Ct. 1037 (citations omitted). Accordingly, it is clear that the courts should give the IRS broad authority to implement and regulate the collection of taxes. As such, regulations relating to the EFTPS and its implementation, should be afforded deference by this Court. *Id.*

1. *Taxpayers Generally Have a Limited Right to Designate Deposits, Pursuant to 26 U.S.C. § 6656.*

Congress has afforded taxpayers a limited statutory right to designate tax deposits following the failure to deposit taxes. Specifically, 26 U.S.C. § 6656(e)(1) permits that tax deposits may be applied to the most recent period(s) to which the deposit relates "unless the person making such deposit designates a different period or periods to which the deposit is to be applied." 26 U.S.C. § 6656(e)(1). However, designations under 26 U.S.C. § 6656(e)(1) are to be made "only during the 90–day period beginning on the date of a notice that a penalty under subsection (a) has been imposed for the specified tax period to which the deposit relates." 26 U.S.C. § 6656(e)(2). Even more, the statutory right to designate tax deposits arises "only between tax periods if there is an underpayment of a deposit for a specified period, [and] the IRS issues a notice that a penal-ty will be imposed for the specified period, and the designation to a different period is made within 90 days of such notice." (Def.'s Opp'n to Pl.'s & CounterClaimants' Mot. for Summ. J. ("Def.'s Opp'n") 9.) Finally, the statutory language in § 6656 does not confer an express right to designate between trust fund and non-trust fund taxes. (Def.'s Opp'n 9.)

■ The Taxpayers cannot succeed in waiving their penalties pursuant to § 6656(a), because penalties may be waived only where "it is shown that such failure [to comply with the requirements of subsection (a)] is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6656(a) (" § 6656(a)"); *see F.E. Schumacher Co., Inc.,* 308 F.Supp.2d 819. As the court in *F.E. Schumacher Co., Inc.* concluded, "[r]easonable cause [requires] that [ ] taxpayer[s] exercise[ ] ordinary business care and prudence with regards to decisions and/or methods." *Id.* However, the Taxpayers cannot show that their failure to make tax deposits was due to reasonable cause, as defined by *F.E. Schumacher Co., Inc.* because the Companies' failure to make deposits was due solely to the fact that they failed to make deposits for certain payroll periods during the Period at Issue. As such, the Taxpayers cannot satisfy the "heavy burden" of proving reasonable cause. *Id.* Therefore, like the plaintiff in *F.E. Schumacher Co., Inc.,* whose payments were not in compliance with the EFTPS's regulations, but instead, "a result of deliberate and conscious decision," the Companies' "failure to comply with EFTPS was due to [their] own willful neglect." *Id.*; 26 U.S.C. § 6656(a). Section 6656 is therefore inapplicable because the Taxpayers cannot show reasonable cause or the absence of willful neglect.

Section 6656 is nonetheless instructive because it provides one of the only means

by which taxpayers are afforded a right to designate tax deposits. Yet, § 6656 provides a limited right to designate deposits and it does not expressly provide for the designation between trust fund and non-trust fund taxes, thereby indicating that Congress necessarily intended a very limited right of designation. Accordingly, not only is designation under § 6656 inapplicable in the instant action, it is illustrative that Congress did not intend to provide the right of designation to persons like the Taxpayers.

### C. Permitting the Taxpayers to Designate the Companies' Tax Deposits to Trust Fund Taxes Would Undermine the Purposes of § 6672.

#### 1. § 6672 is Intended to Reach Responsible Persons.

Defendant U.S.A. contends that if Taxpayers are permitted to reallocate certain taxes owed to the Government, any loss would be shifted to the Government, which should not be burdened by the Taxpayers' "own misappropriation of taxes which belonged to the [U.S.]" (Def.'s Mot. 18.) Defendant U.S.A. argues that because § 6672 is intended to "promote[ ] the full collection of taxes" and "reach those responsible for the corporation's failure to pay the taxes which are owing," the Taxpayers, not the Government, should remain liable for the Companies' failure to pay certain taxes. *Davis*, 961 F.2d at 872, 877; *see Cash v. U.S.*, 961 F.2d 562 (5th Cir.1992) (holding that "[a]lthough denoted a penalty in the statute, the liability imposed by [§ ] 6672 is not penal in nature because it only *recovers for the Government* the same amount the employer was required to withhold and remit.") (emphasis added).

Specifically, Defendant U.S.A. argues that if the Taxpayers are successful in redesignating certain taxes, "the IRS would suffer the loss of the non-trust fund taxes and have no recourse against those responsible for the Companies' failure to full [sic] pay all employment taxes." (Def.'s Mot. 18.) Accordingly, because the purpose of § 6672 is to hold responsible persons liable and make the federal Government whole, this Court is unwilling to provide the Taxpayers with a right to designate certain taxes because that would impermissibly shift losses to the Government and implicitly disregard § 6672.

#### 2. The IRS May Designate Taxes as it Chooses.

■ Defendant U.S.A. also contends that although "a taxpayer submit[ting] a voluntary payment[6] [ ] may designate to which liability the money should be applied … [i]f the taxpayer fails to target the funds to a specific liability, the IRS may apply the payment as it sees fit." *Davis*, 961 F.2d at 878 (internal citations omitted). Defendant U.S.A. suggests that because the Taxpayers failed to designate where liability taxes should be applied by way of a prior agreement with the IRS, the IRS did not act improperly when it designated Taxpayers' deposits to certain funds, as it saw fit. (Def.'s Mot. 18.) *Davis* recognized that at least one district court summarily dismissed a challenge to an IRS reallocation, in dicta. *Id.* at 879; *see Ellis v. U.S.*, 87–2 U.S. Tax Cas. (CCH) 9418, at 89 (W.D.Wis.1987); *see also Energy Resources Co., Inc.*, 495 U.S. at 550, 110 S.Ct. 2139 (holding that in the context of a bankruptcy proceeding, "[t]he Government is correct that, if it can apply a debtor corporation's tax payments to non-trust fund

---

**6.** It is undisputed that the deposits at issue are voluntary, as opposed to non-voluntary. Specifically, "a voluntary payment [ ] is a payment not made pursuant to judicial or

administrative order." *Davis*, 961 F.2d at 878; *see also Muntwyler v. U.S.*, 703 F.2d 1030, 1032 (7th Cir.1983).

liability before trust fund liability, it stands a better chance of debt discharge because the debt that is not guaranteed will be paid off before the guaranteed debt ... the Government wants an assurance that its taxes will be paid even if the reorganization fails ... We therefore hold that they may order the IRS to apply tax payments to offset trust fund obligations where it concludes that this action is necessary for a reorganization."); *see U.S. v. De Beradinis*, 395 F.Supp. 944, 951 (D.Conn.1975) (holding that although "[t]he defendant claim[ed] that the U.S. ha[d] failed to apply funds received by it in such a way as to relieve him of the responsible officer assessment against him ... [t]his charge is not denied, in fact for the Commissioner of Internal Revenue to have done otherwise would have been to shirk his responsibility to insure that the maximum amount of assessed tax be collected.")

The Court in *Davis* provided several reasons why it is not within the purview of the courts to order a reallocation of tax payments, following an IRS designation. *Davis*, 961 F.2d at 878. First, pursuant to the Supreme Court's express warning, courts should not "creat[e] a checkerboard of federal tax law." *Id.* Second, "straightjacketing the IRS into its initial allocation decisions would be inconsistent with the goal of maximizing tax revenues." *Id.* Third, the plaintiff in *Davis* made no showing that "he was injured by the reallocation or that he detrimentally relied on the original allocation." *Id.* Although the facts in *Davis* are different than those in the instant action, namely that the Taxpayers made deposits, not payments, and the Taxpayers allege they have been injured by the IRS's designations, *Davis* still provides

guidance. Principally, it illustrates that it is not improper for the IRS to designate taxes as it chooses. In terms of the Taxpayers' alleged injury, it is clear that they failed to deposit taxes for certain payroll periods, so that any harm caused is abated. Accordingly, the IRS did not act improperly when it designated the Companies' taxes as it saw fit.

Furthermore, *Davis* illustrates the courts' limited ability to intervene with IRS regulations, once they have been implemented. *Davis*, 961 F.2d at 878. Although the Taxpayers argue that this Court should compel the IRS to "provide EFTPS taxpayers with an alternative means to designate voluntary payments of tax as between the trust fund and nontrust fund portions of their liabilities," they have failed to provide this Court with any authority that permits a district court to re-write tax law or compel the IRS to modify the EFTPS, particularly in light of the general presumption against interfering with federal tax policy. (Def.'s Reply 6; Pl.'s Opp'n 8.) Rather, *Davis* indicates that courts should not interfere with federal tax law, lest they "create [a] checkerboard of federal tax law." *Id.* Accordingly, it is not within this Court's purview to modify lawful EFTPS regulations, pursuant to *Davis*.

### 3. The Designation of Voluntary Deposits.

Taxpayers contend that because the Companies' tax deposits were voluntary, they are entitled to designate deposits toward "[that] portion of their tax liability the payment should be applied." (Pl.'s Mot. 8.) Taxpayers rely on several cases to support this position.[7] The Taxpayers' re-

---

**7.** Taxpayers' reliance on *U.S. v. Kaiser*, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960) is misplaced because *Kaiser* dealt with payroll taxes in general. (In *Woody v. U.S.*,

368 F.2d 668, 671 (9th Cir.1966), the Ninth Circuit in fact noted that *Kaiser* "was [limited to] reviewing the evidence only to determine whether it was sufficient to support the out-

liance on cases like *Energy Resources Co., Inc.* though, is misplaced because *Energy Resources Co., Inc.* deals with a bankruptcy proceeding [8] (Pl.'s Mot. 11) and several other cases relied upon by the Taxpayers deal with the *payment* of taxes,[9] not the *deposit* of electronic taxes. (Def.'s Opp'n 4.) (emphasis added). Indeed, the cases relied upon by the Taxpayers do not provide strong support for the Taxpayers' position because they are distinguishable from the instant action.

Moreover, the IRS policy relied upon by the Taxpayers [10] to suggest that the IRS should honor the Taxpayers' intended designations is not applicable. *See* Rev. Proc. 2002–26, 2002 WL 545245.[11] Defendant U.S.A. asserts that "in order to come within the purview of Revenue Procedure 2002–26, the Taxpayers must show that (1) taxes had been assessed (2) at the time the Companies (3) tendered (4) a partial payment," but which the Taxpayers cannot establish. (Def.'s Opp'n 5.) First, Defendant U.S.A. argues that the Companies' employment taxes at issue were not yet assessed when the Companies made payroll tax deposits. Rather, "the employ-

ment taxes required to be reported on the Companies' quarterly tax return did not become due and payable until the time such return was required to be filed." (Def.'s Opp'n 5; *see Jones v. U.S.*, 60 F.3d 584 (9th Cir.1995) (holding that taxes are not payable to the Government at the time they are withheld, but rather, subsequently).) Because assessments could only have been made once the Companies filed quarterly tax returns, the IRS did not have any information upon which to base an assessment, prior to the end of each quarter. As such, Defendant U.S.A. correctly states that "[a]bsent an assessment, the right to designate [did] not arise." (Def.'s Opp'n 6.) Accordingly, at the time the Taxpayers made their tax deposits, the employment taxes had not yet been assessed, and so the right to designate had not yet risen.

Furthermore, the purpose of Revenue Procedure 2002–26 is to "update and restate the [IRS's] position regarding the application, by the Service, of a *partial payment* of tax, penalty, and interest for one or more taxable periods" in instances where the taxpayer has failed to provide

---

come, not whether it compelled the outcome.").

**8.** Defendant U.S.A. states that "[t]he Taxpayers' reliance on *Energy Resources Co., Inc.* is misplaced. The remittances which the Taxpayers seek to designate in this case are tax deposits. Nowhere does *Energy Resources Co., Inc.* discuss designation of depository taxes ... The instant action does not involve a Chapter 11 corporate debtor, nor a plan of reorganization, either. In addition, *Energy Resources Co., Inc.* does not address any rights of an employer to designate payroll tax deposits." (Def.'s Reply 2, 4.) Rather, *Energy Resources Co., Inc.* deals with a Chapter 11 reorganization plan, which does not permit the avoidance of liability, which the Taxpayers seek.

**9.** In *Freck v. I.R.S.*, the Third Circuit dealt with a partial payment, which was not pres-

ent in this instance, as the Taxpayers' deposits at issue were complete. *Freck*, 37 F.3d 986 (3d Cir.1994).

**10.** In their Motion for Summary Judgment, Taxpayers claim that "they were entitled to designate their voluntary payments pursuant to the authority of Rev. Proc. 2002–26 I.R.B. 2002–15 746." (Pl.'s Mot. 5 FN 1.)

**11.** IRS Policy states: "If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer (or have mutually agreed to as to the amount and liability but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions to the application of the payment, the Service will apply the payment in accordance with those directions." Rev. Proc. 2002–26 I.B.R. 2002–15, 746 Section 3.

"specific written directions as to the application of the *payment*." Rev. Proc. 2002–26 (emphasis added); Pl.'s Mot. 8; see Def.'s Opp'n 7. As such, the distinction between "payments" and "deposits" is an important one because Revenue Procedure 2002–26 applies only to voluntary *payments*. *See Danoff v. U.S.*, 324 F.Supp.2d 1086, 1097 (C.D.Cal.2004) (holding that there is a "plain distinction between a 'deposit' and a 'payment' of taxes."). Deposits, such as those made by the Companies, are remittances when "no assessment is then outstanding against the taxpayer" and the funds are held "as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Rosenman v. U.S.*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). Even more, each time the Companies made deposits, they were complete deposits for that payroll period so that none of the deposits the Companies made were partial. As such, the Court concludes that the Companies' tax deposits were complete deposits, rather than partial payments, and not assessments, as is required for Revenue Procedure 2002–26 to apply. (Def.'s Opp'n 6–8.) Accordingly, the Taxpayers' contention that they have a right to designate, pursuant to Revenue Procedure 2002–26, is incorrect.

### D. *Taxpayers' Unfairness Argument*

■ Ultimately, the Taxpayers argue that the IRS' allocation of the Companies' deposits is unfair. However, this Court cannot provide the Taxpayers with a reallocation simply because they believe that the EFTPS acted unfairly. First, like the plaintiff in *Davis*, the Taxpayers' argument would necessarily "reward responsible corporate officers for their ignorance and force the federal [G]overnment to subsidize management efforts to revive private corporations." *Davis*, 961 F.2d at 871, 874. Responsibility under § 6672 instead, "is a matter of status, duty, and authority, not knowledge." *Davis*, 961 F.2d, at 873. (internal citation omitted); *see U.S. v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (holding that individuals with tax payment obligations are liable "for their 'conversion' of the tax funds to private use"). As such, unfortunately for the Taxpayers, federal tax law does not consider whether they consider the IRS's designations unfair. Accordingly, because the Taxpayers were responsible parties during the Period at Issue, "a penalty may be exacted from [them]" regardless of their intent or knowledge, and regardless of whether they believed it to be fair. *Davis*, 961 F.2d at 875.

Furthermore, the Ninth Circuit has held that even when the IRS erroneously allocated payments to non-trust fund liabilities, which thereby increased a taxpayer's liability, fairness is not a factor. *Buffalow*, 109 F.3d at 574–75. The Ninth Circuit first held that the IRS' desire to "maximize tax collections" may have been "unfortunate for [the taxpayer], but it is a misfortune the company, and [the taxpayer], could easily have avoided by giving an allocation instruction to the IRS." *Id.* at 575; *see also Balzer v. U.S.*, No. CV 98–1606, 2000 WL 1130075 (holding that in a bankruptcy proceeding, "plaintiffs [did] not allege sufficient facts to show that the conduct of the IRS vitiate[d] their willful failure to pay the employment taxes."). Therefore, it is clear that the IRS's goal of maximizing tax collections and placing liability with responsible persons is heavily weighed by courts. *Buffalow*, 109 F.3d at 574. Ultimately, the court emphasized liability without fault when it concluded:

[Taxpayer] claims that the IRS misled him; unfortunately for him, the fact is that he failed to consider federal tax law. We do not say that [taxpayer] had a bad heart. But the tax engine is blindly

voracious; it does not always look into a man's heart before it devours him.

*Id.* The taxpayer in *Buffalow* had an arguably stronger argument against the IRS's "improper designations," because it resulted in greater liability for the taxpayer, than the Taxpayers, whose Companies' failure to make deposits for all payroll periods during the Period at Issue resulted in their current position.[12] *Id.* at 574; *see Purcell v. U.S.,* 1 F.3d 932, 943 (9th Cir. 1993) (holding that "[plaintiff] is more the victim than the culprit here, his motives and actions hardly fitting him for the severe consequences he must be made to endure. Yet Congress has extended liability for a corporation's unpaid withholding taxes to its 'responsible' officers and we must take the law as we find it."); *see also Hewitt v. U.S.,* 377 F.2d 921 (5th Cir.1967). Accordingly, if the Ninth Circuit was unwilling to abate a taxpayer's liability in *Buffalow,* in light of an unapologetically voracious tax engine, it is clear that the Taxpayers' liabilities cannot be abated either, no matter how slighted the Taxpayers feel.

Accordingly, the Court construes the EFTPS and its regulations as lawful, so that any designations the IRS made were also lawful. Because § 6672 is based on the premise that liability should follow responsibility, the Court also concludes that the Taxpayers remain liable for those taxes not paid by the Companies.

III. *RULING*

Defendant U.S.A.'s Motion for Summary Judgment is **GRANTED.** Taxpayers' Motion for Summary Judgment is **DENIED.** Defendant U.S.A. is entitled to Judgment from Construction in the amount of $194,532.85, and from Management in the

amount of $503,292.24, plus accrued interest.

IT IS SO ORDERED.

---

**12.** The Taxpayers vigorously disagree about this issue, but again, even the Taxpayers concede that they were responsible parties and that the Companies failed to pay the taxes, for purposes of § 6672. (Pl.'s Mot. for Summ. J. 10, 13.)